IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**EDWARD SOARES,**

       Plaintiff,

v.

**HAROLD ELLIOT, Individually, & LSUE CONNECTOR COMPANY, a Texas corporation d/b/a THE CONNECTOR COMPANY,**

       Defendants.

## COMPLAINT

COMES NOW Plaintiff, Edward Soares, by and through his counsel, Cornish & Dell'Olio, P.C., and for his Complaint against the Defendants, Harold Elliot and Lsue Connector Company, alleges the following:

### Introduction

The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA"), the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq*. (the "Wage Claim Act"), and the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq*., as implemented by the Colorado Minimum Wage Order (the "Minimum Wage Act"), contain various rules regarding employee wages and working hours. Defendants Lsue Connector Company and Harold Elliot violated these laws by misclassifying Plaintiff as an independent contractor and failing to pay

1

regular and/or premium pay for all hours worked. This action seeks to recover damages and backpay to compensate Plaintiff for these wage violations.

## Jurisdiction

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## Venue

2. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b)(2).

## Parties

3. Plaintiff Edward Soares ("Plaintiff") is a Colorado citizen who resides in this judicial district.

4. Defendant Lsue Connector Company, doing business as The Connector Company (hereinafter "Lsue"), is a Texas corporation.

5. Defendant Harold Elliot ("Mr. Elliot") is a Texas citizen who resides in Dike, Texas.

6. At all times relevant to this action, Mr. Elliot was the president of Lsue.

7. At all times relevant to this action, Mr. Elliot exerted substantial operational control over significant aspects of Plaintiff's employment.

8. At all times relevant to this action, Defendants transacted business in Colorado.

## General Allegations

9. All previous allegations are incorporated herein.

10. Amongst other things, Lsue provides cable splicing and installation services to businesses located throughout the United States, including, but not limited to, Colorado, Maine, New York, South Carolina, South Dakota, New Jersey, Oregon, Utah, Arizona, California, and Texas.

11. At all times relevant to this action, Lsue employed cablers and installation technicians.

12. At all times relevant to this action, Lsue was engaged in interstate commerce.

13. For each of the years 2018 and 2019, Lsue had a gross volume of sales in excess of $500,000.

14. From approximately March 2018 until August 2019, Plaintiff worked as an installation technician for Defendants.

15. As a regular and recurrent part of his duties as an installation technician for Defendants, Plaintiff engaged in interstate commerce by, among other things, traveling to job sites throughout the United States.

The Employment Relationship

16. Throughout Plaintiff's employment with Defendants, he was misclassified as an independent contractor.

17. Defendants exercised extensive control over Plaintiff's work.

18. Defendants dictated Plaintiff's work schedule, assigning work orders and tracking his hours, at least approximately, based on when Plaintiff checked in and out of jobs.

19. Mr. Elliot gave Plaintiff specific instructions about how to perform installation, and often commanded that Plaintiff work faster and more efficiently.

20. Defendants required that Plaintiff send daily work reports to Mr. Elliot.

21. Defendants required Plaintiff to use Lsue's equipment and to utilize installation techniques that were taught to Plaintiff in Lsue-mandated training.

22. Defendants retained the right to hire and fire installation technicians such as Plaintiff.

23. Plaintiff was paid a flat amount, or a "day rate," for each day that he worked at a job site, regardless of the number of hours that he worked each day.

24. The day rate that Plaintiff received for each day that he worked at a job site ranged between $200 and $250.

25. Plaintiff could not increase or decrease his profit based on how well he performed his job.

26. Much of the equipment necessary to complete installations was provided to Plaintiff by Lsue.

27. Lsue reimbursed Plaintiff for materials and for items such as hand tools.

28. Lsue paid for Plaintiff to attend job-related training.

29. The relationship between Defendants and Plaintiff was continuous and indefinite.

30. At all times relevant to this action, Plaintiff had to be available and Lsue had to be his primary job, and the expectation was that Plaintiff would go from project to project.

31. If Plaintiff declined projects assigned by Defendants, he faced adverse consequences and therefore did not enjoy the flexibility of choosing projects.

32. At all times relevant to this action, Mr. Elliot acted directly and indirectly in the interests of Lsue in relation to Plaintiff by, among other things, setting Plaintiff's rate of pay and method of compensation, speaking to Plaintiff on a near-daily basis, determining Plaintiff's work assignments, and determining not to pay Plaintiff overtime wages.

33. Plaintiff completed all tasks assigned to him by Mr. Elliot for the benefit of Defendants.

34. The work of installation technicians such as Plaintiff was an integral part of Lsue's business, without which Lsue would exist in name alone.

35. Plaintiff did not make any investments of capital into Lsue.

36. At all times relevant to this action, Plaintiff was an employee within the meaning of the FLSA.

37. At all times relevant to this action, Plaintiff was an employee within the meaning of the Wage Claim Act and the Minimum Wage Act.

38. At all times relevant to this action, Lsue was Plaintiff's employer within the meaning of the FLSA, the Wage Claim Act, and the Minimum Wage Act.

39. At all times relevant to this action, Mr. Elliot was Plaintiff's employer within the meaning of the FLSA.

<u>Hours Worked</u>

40. Defendants did not record the specific amount of time worked by Plaintiff.

41. While employed by Defendants, Plaintiff was compensated for only a portion of time that he spent on principal activities for the benefit of Defendants.

42. Among other things, travel to job sites was an integral and indispensable part of Plaintiff's job for Defendants.

43. Plaintiff did not receive any wages for the time that he spent traveling away from home to job sites for Defendants.

44. On approximately 25 occasions between March 2018 and August 2019, Plaintiff worked for Defendants in excess of twelve hours per day.

45. Defendants knew and were aware that Plaintiff routinely worked more than twelve hours per day.

46. Defendants did not pay overtime wages to Plaintiff for hours that he worked in excess of twelve hours per day.

47. For example, on October 31, 2018, Plaintiff worked for approximately 21 hours.

48. Plaintiff did not receive any wages for the work that he performed for Defendants on October 31, 2018.

49. For approximately 46 weeks between March 2018 and August 2019, Plaintiff worked for Defendants for more than forty hours per week.

50. Defendants knew and were aware that Plaintiff routinely worked more than forty hours per week.

51. Defendants did not pay overtime pay for hours worked by Plaintiff in excess of forty hours per week.

52. For example, for each of the weeks of July 29, 2018, August 5, 2018, August 12, 2018, and August 19, 2018, Plaintiff worked approximately 84 hours.

53. For each of the weeks of July 29, 2018, August 5, 2018, August 12, 2018, and August 19, 2018, Defendants failed to pay Plaintiff an additional one-half times his regular rate of pay for hours worked in excess of 40 for the workweek.

## Wage Demand

54. Between March 8, 2018 and August 3, 2019, Plaintiff accumulated more than 1,000 hours of overtime for which he did not receive overtime wages.

55. On or about the end of August 2019, Plaintiff was terminated by Defendants.

56. At the time of his separation, Defendants did not pay Plaintiff any of the more than 1,000 hours of unpaid overtime wages that were earned, vested, and determinable.

57. On January 10, 2020, and January 31, 2020, Plaintiff sent Defendants written demands for payment of unpaid overtime wages that were earned, vested, and determinable.

58. To date, Defendants have not paid Plaintiff any wages or compensation for the overtime work that he performed between March 8, 2018 and August 3, 2019.

59. As a result of Defendants' improper and willful failure to pay Plaintiff in accordance with the requirements of state and federal wage and hour laws, Plaintiff suffered lost wages and other damages.

**First Cause of Action**
**Against Lsue and Harold Elliot**
**(Fair Labor Standards Act, 29 U.S.C. § 207(a))**

60.     All previous paragraphs are incorporated herein by reference.

61.     The FLSA requires employers to pay employees time and one-half of the regular rate of pay for any work in excess of forty hours per workweek.

62.     At all times relevant to this action, each Defendant was Plaintiff's employer within the meaning of the FLSA.

63.     At all times relevant to this action, Plaintiff was an employee within the meaning of the FLSA.

64.     For approximately 46 weeks between March 2018 and August 2019, Plaintiff worked for Defendants for more than forty hours per week.

65.     Between March 2018 and August 2019, Defendants failed to pay Plaintiff overtime wages for all hours worked in excess of forty hours per week.

66.     Defendants' failure to pay Plaintiff overtime wages for all hours worked in excess of forty hours per week was in violation of the FLSA.

67.     Defendants' violations of the FLSA were willful.

**Second Cause of Action**
**Against Lsue**
**(Violation of the Colorado Minimum Wage of Workers Act, C.R.S. § 8-6-118)**

68.     All previous paragraphs are incorporated herein by reference.

69.     At all times relevant to this action, Colorado Minimum Wage Orders Nos. 34 and 35 were in effect.

70. Colorado Minimum Wage Orders Nos. 34 and 35 required employers employing any person in Colorado to pay employees time and one-half of the regular rate of pay for any work in excess of forty hours per workweek or in excess of twelve hours per workday.

71. On multiple occasions between March 2018 and August 2019, Plaintiff worked in Colorado for Defendant Lsue in excess of twelve hours per day.

72. On multiple occasions between March 2018 and August 2019, Plaintiff worked in Colorado for Defendant Lsue for more than forty hours per week.

73. Between March 2018 and August 2019, Defendant Lsue failed to pay Plaintiff overtime wages for all hours worked in Colorado in excess twelve hours a day and in excess of forty hours per week.

74. Defendant Lsue's failure to pay Plaintiff overtime wages for all hours worked in Colorado excess of twelve hours a day and in excess of forty hours per week was in violation the Colorado Minimum Wage of Workers Act.

75. Defendant Lsue's violations of the Colorado Minimum Wage of Workers Act were committed willfully.

### Third Cause of Action
### Against Lsue
### (Violation of the Colorado Wage Claim Act, § 8-4-109, *et seq.*)

76. All previous paragraphs are incorporated herein by reference.

77. At all times relevant to this action, Defendant Lsue was Plaintiff's employer within the meaning of the Colorado Wage Claim Act.

78. At all times relevant to this action, Plaintiff was an employee within the meaning of the Colorado Wage Claim Act.

79. In August 2019, Plaintiff's employment was terminated at the volition of Defendant Lsue.

80. At the time of Plaintiff's separation, Defendant Lsue did not pay all wages and compensation to Plaintiff that were earned, vested and determinable.

81. On January 10 and 31, 2020, Plaintiff made written demands for payment of unpaid overtime wages due.

82. Defendant Lsue paid nothing in response to Plaintiff's wage demands.

83. Defendant Lsue's failure to pay Plaintiff's earned, vested, and determinable wages violated the Colorado Wage Claim Act.

84. Defendant Lsue's violations of the Colorado Wage Claim Act were committed willfully.

### Relief Requested

Plaintiff requests the following relief:

A. Payment of unpaid overtime wages for all hours worked in excess of twelve hours a day and in excess of forty hours per week;

B. Liquidated damages pursuant to 29 U.S.C. § 216(b);

C. Penalties pursuant to C.R.S. § 8-4-109(3);

D. Attorney's fees and costs as provided for by 29 U.S.C. § 216(b), C.R.S. § 8-6-118, and C.R.S. § 8-4-110;

E. Pre- and post-judgment interest at the highest rate allowed by law; and

F.	All other legal or equitable relief that the Court deems just and proper under the circumstances.

## Jury Demand

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted this 28th day of October, 2020.

        CORNISH & DELL'OLIO, P.C.

        s/Julie D. Yeagle
        Julie D. Yeagle, # 52247
        Cornish & Dell'Olio, P.C.
        431 N. Cascade Avenue, Ste. 1
        Colorado Springs, CO 80903
        TEL (719) 475-1204
        FAX (719) 475-1264
        jyeagle@cornishanddellolio.com
        Attorney for Plaintiff

Plaintiff's address:

Edward Soares
4206 Gatewood Dr.
Colorado Springs, CO 80916